# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR D.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:20-cv-00221-MAA <br><br> **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

On February 3, 2020, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision terminating his disability benefits pursuant to Titles II and XVI of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is reversed, and this matter is remanded for further administrative proceedings.

///

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

# ADMINISTRATIVE HISTORY

On October 16, 2012, Petitioner was found disabled beginning on April 1, 2010. (Administrative Record ("AR") 16, 129-33.) On July 24, 2017, the Commissioner determined that Plaintiff was no longer disabled since July 1, 2017. (AR 16, 134-41.) On December 7, 2017, a Disability Hearing Officer upheld the determination. (AR 150-60.)

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 167-68.) At a hearing held on October 29, 2018, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert. (AR 37-92.)

In a decision issued on December 27, 2018, the ALJ found that Plaintiff's disability ended on July 1, 2017. (AR 16-25.) The ALJ made the following findings:

The most recent favorable decision from October 15, 2012 was the comparison point decision ("CPD"). (AR 18.) At the time of the CPD, Plaintiff had the following medically determinable impairments: sprain/strain of the lumbar and thoracic spine; cervical spine muscle spasm and facet tenderness; sprain/strain/patellofemoral chondromalacia of the left knee; bilateral carpal tunnel syndrome; headaches; right elbow lateral epicondylitis; depression; and anxiety. (*Id*.) These impairments were found to result in the residual functional capacity ("RFC") of less than sedentary work, and Plaintiff was unable to sustain work activities for eight hours a day, five days a week due to pain and depression. (*Id*.)

Plaintiff had not in engaged in substantial activity through the date of the ALJ's December 27, 2018 decision. (*Id*.) Since July 1, 2017, Plaintiff had the following medically determinable, severe impairments: sprain/strain of the lumbar and thoracic spine; cervical spine muscle spasm and facet tenderness; sprain/strain/patellofemoral chondromalacia of the left knee; bilateral carpal tunnel syndrome; and right elbow lateral epicondylitis. (*Id*.) Since July 1, 2017, Plaintiff

did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (*Id.*) Medical improvement occurred on July 1, 2017. (AR 20.) Since July 1, 2017, Plaintiff had an RFC to perform a range of light work. (*Id.*) Plaintiff's medical improvement was related to the ability to work because it resulted in an increase in his RFC. (*Id.*) Since July 1, 2017, Plaintiff was capable of performing his past relevant work as a security guard. (AR 23.) Moreover, since July 1, 2017, Plaintiff could perform other work in the national economy, in the occupations of cashier II; storage facility rental clerk; and inspector, hand packager. (AR 24.) Accordingly, Plaintiff's disability ended on July 1, 2017, and Plaintiff did not become disabled again since that date. (AR 25.)

On December 6, 2019, the Appeals Council denied review. (AR 1-7.) Thus, the ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUE

The parties raise the following disputed issue: whether the ALJ's determination that Plaintiff does not suffer from a severe mental impairment is supported by substantial evidence. (ECF No. 24, Parties' Joint Stipulation ("Joint Stip.") at 5.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

### A.  Legal Standards.

Step two of the Commissioner's five-step evaluation requires the ALJ to determine whether an impairment is severe or not severe. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). An impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In other words, an impairment is not severe "when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have *no more than a minimal effect* on an individual's ability to work." *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (emphasis in original). For mental impairments, examples of basic work activities are the ability to understand, carry out, and remember simple instructions; the use of judgment; the ability to respond appropriately to supervision, coworkers, and usual work situations; and the ability to deal with changes in a routine work setting. *See* Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3.

A claimant's RFC represents the most he can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An ALJ's RFC determination "must set out *all* the limitations and restrictions of the particular claimant." *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 690 (9th

Cir. 2009) (emphasis in original). An ALJ will assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

### B. Background.

In September 2006, while he was working as an electrician, Plaintiff fell backward and down the incline of a concrete wall. (AR 350.) He injured his head, neck, wrists, low back, left upper leg, and left knee. (*Id*.) He was found disabled beginning on April 1, 2010. (AR 16, 129-33.)

In 2013, Plaintiff underwent psychotherapy sessions for major depression. (AR 881, 883-96.)

In June 2015, after the sessions had ended, Plaintiff was examined by Dr. Jennison, a neuropsychologist. (AR 772-92.) After an examination and review of Plaintiff's medical records, Dr. Jennison diagnosed a pain disorder associated with both psychological factors and a general medical condition; as well as major depression, single episode, mild. (AR 784.) As for work restrictions, Dr. Jennison opined that Plaintiff's "[i]rritability and low frustration tolerance is sufficient to cause difficulty in the workplace and if he were to return to work he should not be placed in an occupation requiring interface with the public or jobs of a stressful nature. He has no other restrictions from a psychiatric perspective." (AR 790.)

Although the ALJ did not directly discuss Dr. Jennison's opinion, the ALJ did give little weight to medical opinions dated prior to Plaintiff's disability cessation date of July 1, 2017. (AR 23 (citing AR 427-68 and 701-928).) This assessment presumably included Dr. Jennison's June 2015 opinion. (AR 772-92.) The ALJ explained that such opinions "do not reflect [Plaintiff's] capabilities during the relevant period." (AR 23.)

In April 2017, Plaintiff was referred for a psychiatric follow-up because of a major depressive disorder. (AR 418, 421.)

In May 2017, Plaintiff was examined by Dr. Rezapour, a clinical psychologist. (AR 394-98.) After conducting a mental status examination, Dr. Rezapour diagnosed a mood disorder due to a medical condition. (AR 397.) Dr. Rezapour also opined that Plaintiff's mental limitations were non-existent or mild and that Plaintiff's prognosis was good from a psychiatric standpoint. (AR 397-98.)

In May to July 2017, shortly after Dr. Rezapour's examination, three State agency medical consultants reviewed Petitioner's medical records. (AR 93-106, 107-20, 422-26.) In mental functioning, they each opined that Plaintiff had mild or no limitations (AR 102, 116, 424) and that his mental impairments were not severe (AR 103, 117, 425).

On July 1, 2017, Plaintiff's disability was found to have ended. (AR 25.) The ALJ found that Plaintiff's mental impairments were non-severe on that date, after giving great weight to the opinions of Dr. Rezapour and the three State agency medical consultants who had opined that Plaintiff had mild or no limitations in all relevant areas of mental functioning. (AR 20.)

In late July 2017 through 2018 — after Dr. Rezapour's examination and after the State agency medical consultants' review of the medical records that existed at the time — additional mental health evidence was generated from Plaintiff's examining and treating physicians.

On July 31, 2017, Dr. Jennison, the neuropsychologist who had examined Plaintiff in June 2015, conducted a supplemental evaluation. (AR 761-69.) Dr. Jennison reviewed more current medical records and also reviewed his prior examination findings. (*Id.*) After conducting this review, Dr. Jennison concluded, "There is nothing in these additional medical records to support any change in my previously stated opinions and conclusions" from June 2015. (AR 768.)

In April 2018, Plaintiff visited Dr. Mueller, a treating physician, for back pain. (AR 479.) During the examination, Plaintiff was "anxious and hostile" and

had an "inappropriate mood and affect." (AR 481.)

In August 2018, Plaintiff again visited Dr. Mueller for back pain. (AR 470.) During the examination, Plaintiff was "very combative and rude, complaining, demanding" and had an "inappropriate mood and affect." (AR 472.) Plaintiff was assessed with "Bipolar 1 disorder," with the noted impression of "divorce." (*Id*.) Plaintiff also was assessed with a history of drug abuse. (*Id*.)

During the administrative hearing, the vocational expert was asked a hypothetical question about the prospects of a worker who occasionally had "hostile interactions with supervisors or coworkers and things of that nature." (AR 89-90.) The vocational expert responded that such incidents would undermine employment even if they were "less than occasional. It doesn't take more than a couple [of such incidents] to lead to termination." (AR 90.)

### C. Analysis.

As an initial matter, any alleged error by the ALJ in classifying Plaintiff's mental impairments as non-severe is not the basis for reversal, because the ALJ resolved the severity step in Plaintiff's favor by finding that Plaintiff did have other severe impairments. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out week claims. It is not meant to identify the impairments that should be taken into account when determining the RFC.") (citation omitted). Thus, the classification of Plaintiff's mental impairments as non-severe could not have prejudiced Plaintiff. *See id.* at 1049 (because step two was decided in the claimant's favor, he "could not possibly have been prejudiced" and this "cannot be the basis for a remand"); *Loader v. Berryhill*, 722 F. App'x 653, 655 (9th Cir. 2018) ("Thus, once [the claimant] prevailed at Step 2, it made no difference for the ALJ's ensuing analysis whether his medically determinable depression was previously considered 'severe.'"). Rather, the dispositive question is whether the ALJ's ensuing analysis of Plaintiff's

7

mental impairments, particularly the RFC assessment, accurately reflected Plaintiff's limitations based on all of the relevant evidence in the record. *See Buck*, 869 F.3d at 1049 (in assessing RFC, the ALJ "must consider limitations and restrictions by all of an individual's impairments, even those that are not 'severe'").

The ALJ did not include any mental limitations in the RFC determination reflecting Plaintiff's abilities since July 1, 2017. (AR 21.) This exclusion was undermined by the two types of mental health evidence described above, which post-dated July 1, 2017.

First, on July 31, 2017, Dr. Jennison conducted a supplemental evaluation and declined to change his June 2015 opinion that Plaintiff should not be placed in an occupation requiring interface with the public or jobs of a stressful nature. (AR 768, 790.) Although the ALJ apparently gave little weight to Dr. Jennison's June 2015 opinion because it did not reflect Plaintiff's capabilities during the relevant period (AR 23), it was significant that on July 31, 2017, Dr. Jennison revisited his earlier opinion and declined to change it. By declining to change his opinion, Dr. Jennison effectively reinforced it. Thus, Dr. Jennison's opinions were relevant to Plaintiff's RFC since July 1, 2017. *See Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (in the context of a sentence six remand, an examining physician's opinion that reinforced his earlier opinion was clearly material).

Second, even if Dr. Jennison's opinions, by themselves, were insufficient to undermine the RFC determination, the 2018 medical treatment notes by Dr. Mueller were sufficient. Those notes reflected that Plaintiff displayed an inappropriate mood and affect; was anxious and hostile; was very combative, rude, complaining, and demanding; and had Bipolar 1 disorder. (AR 472, 481.) This evidence was relevant to the RFC assessment of Plaintiff's abilities since July 1, 2017. *See* Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *5 (including evidence of "[r]ecorded observations" as relevant evidence that must be considered for the RFC determination).

These two types of evidence were not considered by any of the four physicians, Dr. Rezapour and the three State agency medical consultants, on whom the ALJ relied to exclude mental limitations from the RFC determination. *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (medical expert's opinion was not substantial evidence where the medical expert failed to consider claimant's most recent panic attack). Thus, the RFC assessment since July 1, 2017 did not account for significant and probative evidence favorable to Plaintiff's position. *See id*. at 1161.

Finally, the failure to consider the mental limitations was not harmless. An error would be harmless in this context if the limitations that the ALJ failed to include, in either the RFC assessment or hypothetical question to the vocational expert, would not make a difference to the work that a claimant could perform. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding that an ALJ's erroneous omission of postural limitations from the RFC was harmless error where the ALJ identified jobs that would accommodate those limitations); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (holding that an ALJ's hypothetical question omitting a limitation would have been harmless error because the limitation "was *not relevant* in deciding whether [the claimant] could perform [his] past work") (emphasis in original). The two types of excluded evidence discussed here, however, were relevant. First, the limitations found by Dr. Jennison, precluding occupations that required public contact or were stressful, would appear to rule out all or most of the occupations identified by the vocational expert: security guard; cashier II; storage facility rental clerk; and inspector, hand packager. Second, the recorded observations of Dr. Mueller, describing Petitioner's hostile and inappropriate behavior during two office visits, would call into question all of the occupations identified by the vocational expert. Although the Commissioner points out that these were only "two isolated instances" of inappropriate behavior (Joint Stip. at 10), the vocational expert testified that it

would take only "a couple" of such instances to result in termination (AR 90). Accordingly, the Court cannot conclude that the failure to consider the two types of evidence was harmless, and reversal is warranted.

## II. Remand for Further Administrative Proceedings.

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id*. (citation and internal quotation marks omitted).

Here, the record raises factual conflicts and ambiguities about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (stating that remand for an award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the existing record does not clearly demonstrate that the claimant is disabled within the meaning of the Social Security Act). Specifically, the evidence of Plaintiff's mental functioning since July 1, 2017 is not ample. Thus the ALJ should not be precluded "from reopening the hearing to receive additional evidence should such a course of action be deemed appropriate." *Treichler*, 775 F.3d at 1105 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). It could be discovered upon remand that the mental limitations are not as serious as alleged, or that Plaintiff could work

despite the limitations.  Moreover, Plaintiff requests only remand for further proceedings.  (Joint Stip. at 13.)

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here.  It is not the Court's intent to limit the scope of the remand.

## ORDER

It is ordered that Judgment be entered reversing the final decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED:  April 5, 2021

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE